NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE
# ARIZONA COURT OF APPEALS
### DIVISION ONE

MICHAEL O., *Appellant,*

*v.*

DEPARTMENT OF CHILD SAFETY, C.O., *Appellees.*

No. 1 CA-JV 22-0002
FILED 6-16-2022

Appeal from the Superior Court in Maricopa County
No. JD37986
The Honorable David O. Cunanan, Judge

**AFFIRMED**

COUNSEL

David W. Bell Attorney at Law, Higley
By David W. Bell
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By James William Rappaport
*Counsel for Appellee Department of Child Safety*

Joshua Fry Law, Phoenix
By Joshua Fry
*Counsel for Appellee C.O.*

---

**MEMORANDUM DECISION**

---

Judge Randall M. Howe delivered the decision of the court, in which Presiding Judge Jennifer B. Campbell and Judge James B. Morse Jr. joined.

---

**H O W E**, Judge:

¶1        Michael O. ("Father") appeals the juvenile court's termination of his parental rights to his child, C.O. For the reasons below, we affirm.[1]

## FACTS AND PROCEDURAL HISTORY

¶2        We view the facts in the light most favorable to sustaining the juvenile court's order. *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 2 ¶ 2 (2016). Father has had a long history of domestic violence and substance abuse. In June 2019, the Arizona Department of Child Safety received a report that Father had engaged in escalating domestic violence with C.O.'s mother and that the two were abusing illegal substances. Despite the Department's intervention, Father engaged in domestic abuse with another woman a few weeks later. Father and mother then left C.O. with a paternal aunt. When the paternal aunt could no longer care for C.O. and the Department could not locate either parent, the Department assumed custody, petitioned for dependency, and the court found C.O. dependent as to Father in December 2019.

¶3        The Department offered Father many services, including substance-abuse treatment and domestic-abuse counseling. Shortly after engaging in services, however, Father was caught with drugs and was incarcerated until March 2020 for violating his parole. After his release, he continued to use drugs—including methamphetamine—through August 2021. He was also arrested on domestic violence charges three times in February 2021. As a result, the Department moved to terminate Father's parental rights on the substance-abuse and 15 months in out-of-home placement grounds.

¶4        The juvenile court held a two-day termination hearing in October and November 2021. During the hearing's first day, the Department's case manager stated that foster mother wanted to adopt C.O.,

---

[1]        The child's mother is not a party to this appeal.

and that even if foster mother could not adopt C.O., he was still "adoptable." Before the second day of the hearing, however, foster mother told the Department that she would no longer adopt C.O. but would continue to remain his foster mother until an adoptive placement could be found.

¶5        At the hearing's second day, the Department's case manager testified that C.O. nonetheless remained adoptable based on his age and the fact that he did not exhibit any new behavioral disorders. Indeed, although he understood foster mother's concern about C.O.'s aggressive behaviors and PTSD, he stated that C.O.'s trauma therapy and additional behavioral services had helped keep his behaviors from worsening. He then said that if Father's rights were terminated, C.O. would be transferred to the Department's adoption unit, where the Department could work specifically with C.O. to find an adoptive placement and could use various outside adoption services to achieve permanency for C.O. He also stated that after parental rights have been terminated to a particular child, more people would be willing to adopt the child.

¶6        The juvenile court terminated Father's parental rights on the substance-abuse and 15 months in out-of-home placement grounds. It also found termination in C.O.'s best interests because it furthered the adoption plan and would provide C.O. with permanency and stability. While C.O. was not in adoptive placement at the time of severance, he remained adoptable and would be cared for until a new adoptive home could be found. The juvenile court alternatively concluded that continuing the parent-child relationship would harm C.O. because although Father had just engaged in substance-abuse treatment, C.O. would linger in care for an indeterminate period without parents to care for him, a detriment. Father timely appealed.

**DISCUSSION**

¶7        Father does not challenge the juvenile court's finding that the statutory grounds for termination were met. Rather, Father argues that the juvenile court erred in finding that C.O. was adoptable, and that termination was otherwise in C.O.'s best interests. A juvenile court's termination determination is reviewed for an abuse of discretion. *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47 ¶ 8 (App. 2004). To terminate parental rights, the juvenile court must find by clear and convincing evidence the existence of at least one statutory ground under A.R.S. § 8–533 and by a preponderance of the evidence that termination would be in the child's best interests. A.R.S. § 8–533(B); Ariz. R.P. Juv. Ct. 66(C); *Jennifer S.*

*v. Dep't of Child Safety*, 240 Ariz. 282, 286 ¶ 15 (App. 2016). Because the juvenile court is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts, *Ariz. Dep't of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, 334 ¶ 4 (App. 2004), we will affirm a termination decision unless no reasonable evidence supports it, *Xavier R. v. Joseph R.*, 230 Ariz. 96, 100 ¶ 11 (App. 2012).

¶8 Termination of parental rights is in a child's best interests if the child will benefit from the termination or will be harmed if the relationship continues. *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 150 ¶ 13 (2018). In determining whether the child will benefit from termination, relevant factors include whether the current placement is meeting the child's needs, an adoption plan is in place, and if the child is adoptable. *Demetrius L.*, 239 Ariz. at 3–4 ¶ 12. The juvenile court may find that continuing the parent-child relationship would be detrimental to the child's wellbeing because the child would linger in care with no prospect of reunifying with the parent. *See Aleise H. v. Dep't of Child Safety*, 245 Ariz. 569, 571–72 ¶¶ 6, 10 (App. 2018). The juvenile court presumes that the interests of the parent and child have diverged once one of the statutory grounds for termination has been proved. *Alma S.*, 245 Ariz. at 150 ¶ 12.

¶9 Reasonable evidence shows that continuing the parent-child relationship would harm C.O. Father continuously endangered C.O. by engaging in domestic violence in front of him. Father also prioritized drug use over C.O.'s health and safety. Although he began to engage in substance abuse treatment a few weeks before the trial, he remained far from being able to care for C.O., thereby subjecting him to long-term instability with no prospect of reunifying soon, a clear detriment. *Aleise H.*, 245 Ariz. at 571–72 ¶¶ 6, 10; *Bennigno R. v. Ariz. Dep't of Econ. Sec.*, 233 Ariz. 345, 350 ¶ 23 (App. 2013) ("[T]he continued presence of the conceded statutory grounds for [termination] also may, in certain cases, negatively affect the children.").

¶10 Reasonable evidence also supports the trial court's conclusion that C.O. would benefit from termination of Father's parental rights. Although C.O.'s foster mother said that she no longer wanted to adopt him, the Department provided evidence that C.O. is adoptable, and that adoption was likely. *See Titus S. v. Dep't of Child Safety*, 244 Ariz. 365, 370 ¶ 22 (App. 2018). While he has shown aggressive tendencies and has been diagnosed with PTSD, C.O. is young and has been in trauma treatment, which has helped with his aggressive behaviors. Recognizing C.O.'s behaviors, the Department's case manager testified that C.O. would have increased services available to help the Department find a potential

adoptive parent for him and that finding a foster family was likely. Contrary to Father's argument otherwise, such evidence, along with the other factors stated above, supports a best interests finding. *See In re Maricopa Cnty. Juv. Action No. JS–501904*, 180 Ariz. 348, 352 (App. 1994) (stating that the Department "need not show that it has a specific adoption plan before terminating a parent's rights," but must "show that the children are adoptable"); *Dominique M. v. Dep't of Child Safety*, 240 Ariz. 96, 98 ¶ 11 (App. 2016) (a child may be adoptable despite no current adoptive plan).

**¶11**     Father argues, however, that the court's adoptability finding was speculative. He analogizes the facts here to those in *Titus S*. In *Titus S.*, this court reversed the trial judge's adoptability finding based on its hope that teenage children would consent to an adoption that they did not want at the termination hearing. 244 Ariz. at 371 ¶ 24. He claims that the juvenile court similarly hoped that current foster mother would change her mind and adopt C.O. But the trial court here found C.O. adoptable despite C.O.'s current foster mother's saying she would not adopt him, and evidence supported that conclusion. The court therefore did not err in finding termination in C.O.'s best interests.

## CONCLUSION

**¶12**     For the reasons stated, we affirm.

